UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

|  |  |  |
|---|---|---|
| TONYA LINDON, as Parent of a Minor and Next Friend MJL, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 5: 13-26-DCR |
| V. | ) ) | |
| BAHRAM KAKAVAND, M.D., et al., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Tonya Lindon's[1] motion to remand this matter to the Fayette Circuit Court.  [Record No. 4]  For the reasons explained below, the  motion will be denied.

# I.

This medical negligence/malpractice suit arises from a medical procedure performed by Defendant Bahram Kakavand, M.D, on the minor child MJL.  On December 13, 2012, the plaintiff commenced this action in Fayette Circuit Court, naming Dr. Kakavand and Kentucky Medical Services Foundation, Inc., ("KMSF") as defendants.  The plaintiff is a citizen and resident of the Commonwealth of Kentucky.  Dr. Kakavand is a citizen of Iran,

---

1    Plaintiff Lindon is the parent of the child allegedly injured by medical procedures performed by Defendant Bahram Kakavand, M.D.  Pursuant to the Court's redaction policy concerning the name of minor children and Rule 5.2 of the Federal Rules of Civil Procedure, the initials "MJL" will be used in place of the minor child's name.

but is a lawful, permanent resident of the United States, domiciled in Virginia. [Record No. 3, p. 2 ¶¶ 6, 7] KMSF is a Kentucky corporation, incorporated and formed pursuant to Kentucky law. [Record No. 3-1, p. 8 ¶ 3]

The plaintiff alleges that, on or about October 14, 2011, MJL underwent an electro-physiology study and ablation performed by Dr. Kakavand at UK Healthcare Kentucky Children's Hospital. [*Id.* ¶ 4] During this procedure, MJL developed a complete heart block that necessitated an emergency implantation of a dual-chamber pacemaker. [*Id.* ¶ 5] The plaintiff contends that Dr. Kakavand "was the agent, servent and employee of [KMSF]" and that KMSF was negligent in its "medical service to [the plaintiff] through its agents, servants and employees or ostensible agents, servants and employees, including but not limited to Bahram Kakavand, M.D." [*Id.* ¶¶ 2-3] However, she has provided no factual support for this conclusory allegation. As a result of the defendants' claimed negligence, MJL allegedly sustained injuries which have required additional medical treatment. The plaintiff seeks an award of damages for past and future physical and mental pain and suffering, past and future medical expenses, and permanent impairment of M.J.L.'s power to earn money. The plaintiff also seeks to recover punitive damages from the defendants. [*Id.,* pp. 8-9 ¶¶ 9-10]

On January 28, 2013, Dr. Kakavand removed this matter to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. [Record No. 3] In the Notice of Removal, Dr. Kakavand asserts that KMSF's citizenship should be disregarded for purposes of determining diversity jurisdiction under 28 U.S.C. § 1332(a) because KMSF was fraudulently joined as a party. [*Id.*, pp. 3-4 ¶¶ 12] The plaintiff filed a timely motion to remand, arguing that: (i) the notice

of removal was untimely; (ii) KMSF did not consent or join in the notice of removal; and (iii) KMSF was properly joined.  As a result, the plaintiff argues that this Court lacks jurisdiction under 28 U.S.C. § 1332.  [Record No. 4]  In her reply, the plaintiff raises a new argument that the defendant's evidence regarding the amount in controversy should be disregarded and that this matter should be remanded for failure to sufficiently demonstrate that her claims exceed $75,000.00, exclusive of interest and costs. [Record No. 6, pp. 1-5]

## II.

A case filed in state court is removable only if it could have been brought in federal court originally.  *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed . . . to the district court of the United States for the district and division embracing the place where such action is pending."); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 83 (2005) ("[Section] 1441 . . . authorizes removal of civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in federal district court.").  Pursuant to 28 U.S.C. § 1332, federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. § 1332(a).  The statute "has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000).  The removing party bears the burden of establishing diversity jurisdiction. *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

## III.

### A.        Timeliness of Removal

Defendant Kakavand asserts that removal was effective when the notice of removal and notice filing were filed on January 28, 2013.  He also argues that removal was timely because it did not become apparent until he received billing records on January 16, 2013, that the amount in controversy exceeded $75,000.00.  [Record No. 5, p. 3] Title 28 of the United States Code, Section 1446(b), governs the timeliness of removal.  This statutory section "provides a two-step test for determining whether a defendant timely removed a case." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 161 (5th Cir. 1992); *see also* 28 U.S.C. § 1446(b)(1), (3).  Under a plain reading of the statute, "if the case stated by the initial pleading is removable, then notice of removal must be filed within thirty days from the receipt of the initial pleading by the defendant." *Chapman*, 969 F.2d at 161.  However, if the case stated by the initial pleading is not removable, the notice of removal may be filed within thirty days of the receipt of any amended pleading or other paper from which the defendant can first ascertain that the case is removable.  *See* 28 U.S.C. § 1446(b)(3).

The time requirements for the removal of civil cases "is a strictly applied rule of procedure and untimeliness is a ground for remand so long as the timeliness defect has not been waived." *Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993) (quotation marks and citations omitted).  "[I]n the interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding the scope of § 1446(b) should be resolved in favor of remand to the state courts." *Brierly v. Alusuisse Flexible*

*Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). A defendant's failure to comply with these temporal requirements acts as barrier to federal jurisdiction.

Here, Dr. Kakavand was served with the summons and a copy of the Complaint on December 27, 2012.[2] On January 28, 2013, he filed the initial Notice of Removal. [Record No. 3, pp. 1-2] However, the Court ordered that the Notice of Removal be stricken because it contained information that violated the Court's redaction policy regarding the names of minor children. Dr. Kakavand was given ten days from January 29, 2013, to cure these deficiencies. [Record No. 2] The same day, on January 29, 2013, he re-filed a notice of removal that complied with the Court's redaction policy. [Record No. 3]

As an initial matter, the parties mistakenly state that January 28, 2013 was the thirtieth day after December 27, 2012.[3] In fact, January 28, 2013, was thirty-two days after the date Dr. Kakavand was properly served. Regardless, this is of no consequence because the thirty-day period for filing the notice of removal did not commence until January 16, 2013, when Dr. Kakavand's counsel received documentation demonstrating that the case was removable.

---

2     The date of service on KMSF is disputed, but it occurred sometime after December 27, 2012.

3     The plaintiff contests the timeliness of Dr. Kakavand's Notice of Removal, arguing that Dr. Kakavand's January 29, 2013 filing was one day past the thirty-day deadline. [Record No. 4-1, p. 2] The plaintiff's argument is predicated on the assertion that the Court's January 29, 2013 Order, striking the initial Notice of Removal, rendered it untimely. The plaintiff, however, misunderstands the effect of the Court's January 29, 2013 Order, and her argument on this point is without merit. The Court allowed Dr. Kakavand ten days to file an amended notice of removal that corrected a clerical issue of redacting the name of the minor child. He complied with the Court's Order the same day. The case was not dismissed; rather, an amendment was allowed. In short, Dr. Kakavand's compliance with the Court's Order would not have rendered the Notice of Removal untimely. The plaintiff provides to no authority to the contrary.

-5-

As indicated above, 28 U.S.C. § 1446(b)(3) provides that if "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained* that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added). The Sixth Circuit instructs that § 1446(b)(3) "starts the thirty-day period running from the date that a defendant has solid and unambiguous information that the case is removable." *Walker v. Phillip Morris USA, Inc.*, 443 F. App'x 946, 950 (6th Cir. 2011) (quotation marks and citations omitted). Thus, as many courts have recognized, when a complaint is silent regarding the amount of damages, as is the case here, "the defendant should make an independent inquiry as to the extent of damages or run the risk of remand when the plaintiff" provides information indicating that the amount of controversy is below the jurisdictional limit. *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1309 (6th Cir. 1990); *see also Adams v. Bellsouth Telcoms, LLC*, No. 12-60-GFVT, 2013 U.S. Dist. LEXIS 2449, at *7-8 (E.D. Ky. Jan. 8, 2013).

The district court in *Adams* was recently confronted with the same issue now before the Court. The *Adams* court concluded that, in light of the fact that Kentucky law prohibits *ad dammnum* clauses, the thirty-day deadline of § 1446(b) did not begin to run until the defendant received a letter from opposing counsel, stating that the plaintiff's medical bills totaled $78,842.63. *Id.* at *9-10 ("It was at this point that the thirty day window to file a notice of removal opened [the defendant] under § 1446(b)(3).").

Much like in *Adams*, the Complaint is silent concerning the amount in controversy. In an effort to ascertain whether the jurisdictional minimal limitation was met for the amount in controversy, Dr. Kakavand's counsel requested that the University of Kentucky ("UK") and KMSF provide him with copies of MJL's medical billing records. It was not until January 16, 2013, when counsel for Dr. Kakavand received these bills that it was established that MJL had incurred over $112,000.00 in medical expenses associated with his alleged injuries. These documents for the first time provided "solid and unambiguous information" that the amount in controversy exceeded $75,000.00. *Walker*, 443 F. App'x at 950.

Thus, because § 1446(b)(3) allows the filing of a notice of removal within thirty days after the receipt of a document "from which it may first be ascertained" that the case is removable, Dr. Kakavand's Notice of Removal was timely filed. The thirty-day time period in which Dr. Kakavand could timely file a notice of removal began on January 16, 2013. The Notice of Removal filed on January 28, 2013 is within the thirty-day window contemplated by the relevant statutory section. Thus, Dr. Kakavand's removal of this action from the Fayette Circuit Court was timely.

### B.    Rule of Unanimity

"[T]here is a rule of unanimity that has been derived from the statutory language prescribing the procedure for removing a state action to federal court, 28 U.S.C. § 1446." *Loftis v. UPS*, 342 F.3d 509, 516 (6th Cir. 2003). This rule "requires that in order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written

consent to the removal." *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999).  The failure of all defendants to join in removal creates a defect in removal procedure within the meaning of § 1447(c).  *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995); *see also Loftis*, 342 F.3d at 516.

Contrary to the plaintiff's assertion, KMSF properly consented to removal through the unambiguous statement of counsel in the Notice of Removal.  [*See* Record No. 3, p. 3 ¶ 11.] While other circuits apply more stringent requirements, the Sixth Circuit allows a less formal means of satisfying the rule of unanimity but it still requires some indicia of consent by the other defendants.  *Harper v AutoAlliance Int'l, Inc.,* 392 F.3d 195, 201-02 (6th Cir. 2004) (removal notice complied with "rule of unanimity" under § 1446 where one defense counsel signed notice pursuant to Fed. R. Civ. P. 11 and correctly represented concurrence by another defense counsel).  Here, the Notice of Removal states, "Defendant KMSF has not yet been served, but in the event it is served, the undersigned counsel will represent KMSF in this action.  KMSF hereby consents through counsel to the removal of this action, without waiving any defenses and objections based on insufficiency of service of process or lack of personal jurisdiction."  [Record No. 3, p. 3 ¶ 11]  The statement by counsel that KMSF, if properly served, consented to the removal of this action is sufficient under Sixth Circuit precedent to satisfy the rule of unanimity.[4]  *Harper*, 392 F.3d at 201-02.

---

4       Because the Court has determined that counsel's statement in the Notice of Removal satisfied the rule of unanimity, the Court need not address the defendants' argument that at the time of the Notice of Removal KMSF still had not been properly served.  Nonetheless, § 1446(b)(2)(B) indicates that a defendant who has not properly been served need not join in or consent to removal.  *See, e.g., Milter v. Wright Med. Group, Inc.*, No. 11-CV-11353, 2011 U.S. Dist. LEXIS 105692, at *6-7 ( E.D. Mich. Sept. 19, 2011) ("Under a well

## C.        Amount-in-Controversy Requirement

A party seeking to invoke federal court jurisdiction has the burden of demonstrating by competent proof that the amount-in-controversy requirement is met. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *see also Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (noting that "[t]his standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement" (internal quotation marks omitted)).  Generally, the amount in controversy can be established by reference to the allegations in the complaint. Additionally, in the Sixth Circuit, it is generally agreed that "the amount in controversy should be determined from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376-77 (6th Cir. 2007) (quotation marks and citations omitted).  However, if the amount of the plaintiff's damages are unclear from the state court complaint, the defendant must set forth sufficient underlying facts to show that it is "more likely than not that the plaintiff's claims will generate damages in excess of $75,000." *Davis v. Progressive Direct Ins. Co.*, No. 08-369-JBC, 2009 U.S. Dist. LEXIS 5640, at *7 (E.D. Ky. Jan. 26, 2009) (internal quotation marks omitted); *see id.* at *5-6.

---

known exception to the unanimity requirement, a defendant who has not been served with process at the time the notice of removal is filed need not join in the notice of removal.") (internal citations omitted).

Although the Complaint is silent regarding the amount of damages,[5] the Notice of Removal indicates that the amount in controversy exceeds $75,000.00. [Record No. 3, pp. 2-3 ¶¶ 8-10]  In pertinent part, the Notice of Removal states:

> In this case, the amount in controversy exceeds $75,000. As Plaintiff's billing records show, Plaintiff's past medical expenses from the University of Kentucky alone are in excess of $112,000. (*See* University of Kentucky billing records, Exhibit 2.) Plaintiff also seeks damages for pain and suffering and for future medical expenses, as well as punitive damages.  Moreover, Plaintiff, a minor child, alleges that he has suffered permanent impairment of the ability to earn money. By a preponderance of the evidence, Plaintiff's claim for damages is in excess of $75,000.

[*Id.*, p. 3 ¶ 10]

While the argument was not made in her motion to remand and initial brief, the plaintiff raises the additional argument in her reply brief that Dr. Kakavand's evidence of the amount in controversy should be disregarded and the case remanded for failure to provide proof that the minimal amount-in-controversy requirement has been met. [Record No. 6, pp. 1-5] The plaintiff contends that Dr. Kakavand's only evidentiary support that the amount in controversy exceeds the jurisdictional amount are MJL's medical bills, and that these medical bills are "squarely within the definition of protected health information" under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  [*Id.*, pp. 1, 2]  The plaintiff maintains that the manner by which Dr. Kakavand's counsel obtained this protected

---

5    In accordance with Kentucky law, the Complaint does not include an *ad damnum* clause identifying the specific amount in damages sought.  Ky. R. Civ. P. 8.01(2).

health information was an "egregious violation" of HIPAA and Rules 45 and 26 of the Federal Rules of Civil Procedure.[6]  [*Id.*]

The plaintiff, however, misconstrues Dr. Kakavand's averments concerning the amount in controversy.  While he relies on certain medical bills of MJL, these records are not the only support provided in furtherance of his contention that the amount in controversy exceeds $75,000.00.  He notes that this is a medical malpractice action where the plaintiff is not only seeking compensation for past medical expenses but also future medical expenses for MJL's alleged on-going medical condition, as well as punitive damages.  *See, e.g., Johnson v. Fifth Third Bank, Inc.*, 476 B.R. 493, 497 (W.D. Ky. 2012) ("Claims for punitive damages should be included in the amount-in-controversy calculation, 'unless it is apparent to a legal certainty that such cannot be recovered.'") (quoting *Hayes*, 266 F.3d at 572). Additionally, Dr. Kakavand asserts that MJL, a minor child, is seeking damages for an

---

6        As noted by the plaintiff, 45 C.F.R. § 164.512(e) governs the disclosure of HIPAA-protected information pursuant to judicial proceedings.  This statutory provision allows for the disclosure of protected information in certain circumstances.  [Record No. 6, p. 3 (citing 45 C.F.R. § 164.512(e))]  One such circumstance under which disclosure is permissible is when either the party requesting the information or the healthcare provider has made a reasonable efforts to notify the individual of the disclosure prior to the disclosure being made.  *See* 45 C.F.R. §§ 164.512(e)(1)(ii)(A), (e)(1)(iii) & (e)(1)(iv).

        The affidavit provided by the plaintiff's counsel, however, only indicates that "[u]pon information and belief, neither counsel for Defendant Kakavand nor the University made any attempt to seek Plaintiff's permission to release medical information, or to notify Plaintiff's counsel of the request . . . ." [Record No. 6-1, p. 1]  This averment falls short of properly alleging a HIPAA violation.  Moreover, the Court notes that the plaintiff was fully aware that Dr. Kakavand and his counsel (who is also the counsel for KMSF, the entity that released the billing records) were in possession of these records since at least January 29, 2013, when Dr. Kakavand both referenced the billing records in the Notice of Removal and attached them thereto. Despite this, the plaintiff did not raise this allegation of HIPAA violations until she filed her reply brief to her motion to remand.  Nonetheless, even if the Court found this disclosure to be a HIPAA violation (or to have even been properly alleged as such), the plaintiff cites to no authority that dictates that such information must be stricken, or that the Court may not consider it in determining if the jurisdictional amount-in-controversy requirement has been met.

alleged permanent cardiac impairment resulting in the loss of the child's ability to earn money in the future.  In short, Dr. Kakavand relies on more than the alleged improperly-obtained medical bills of MJL to support his contention that the amount in controversy exceeds $75,000.00.

The Court concludes that Dr. Kakavand has met his burden by demonstrating that the minimal jurisdictional amount-in-controversy requirement is exceeded.  *See Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061-62 (11th Cir. 2010) (noting that courts may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that the amount-in-controversy requirement is met); *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (holding that when determining the amount in controversy, the court may look to the nature of the injuries alleged and finding that a complaint alleged damages greater than $75,000.00 when the plaintiff suffered congestive heart failure and requiring a six-day hospital stay).

### D.   Fraudulent Joinder

Finally, Dr. Kakavand argues that removal was appropriate because the plaintiff lacks any colorable claim against KMSF.  [Record No. 5, pp. 12-16]  He contends that KMSF was fraudulently joined and its citizenship may be disregarded for diversity purposes.  [*Id.*]  An exception to the complete-diversity requirement exists when a non-diverse defendant has been fraudulently joined.  *See Coyne*, 183 F.3d at 493. ("[The Sixth Circuit] has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity

grounds."). Fraudulent joinder exists, and the case need not be remanded, if there is no "reasonable basis" to expect that the plaintiff's claims against the non-diverse defendant could succeed under state law. *Id.* (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)). Although the plaintiff's actual motive is irrelevant to the fraudulent-joinder inquiry, *Jerome-Duncan, Inc. v. Auto-By-Tel Mktg. Corp.*, 176 F.3d 904, 907 (6th Cir. 1999), this test serves as "a proxy for establishing the plaintiff's fraudulent intent. If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against [that defendant] was to defeat diversity and prevent removal." *Smith v. SmithKline Beecham Corp.*, No. 11-56-ART, 2011 U.S. Dist. LEXIS 75951, at *14 (E.D. Ky. July 13, 2011) (*SmithKline Beecham II*) (citation and internal quotation marks omitted).

In deciding whether a defendant has been fraudulently joined, the Court "must resolve all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the nonremoving party," and "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493 (omission in original) (internal quotation marks omitted). If a determination cannot be made from the face of the complaint, the Court may "pierce[] the pleadings to consider summary-judgment-type evidence." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (internal quotation marks omitted). However, the Court must be careful not to "step[] from the threshold jurisdictional issue [of fraudulent joinder] into a decision on the merits." *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990); *see also Walker*, 443 F. App'x at 954 (holding that the proper

-13-

standard for evaluating claims of fraudulent joinder is akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential); *Cordle v. Merck & Co.*, 405 F. Supp. 2d 800, 803 (E.D. Ky. 2005) (same).  The removing party bears the burden of establishing fraudulent joinder.  *Alexander*, 13 F.3d at 949; *see also Parker v. Crete Carrier Corp.*, 914 F. Supp. 156, 159 (E.D. Ky. 1996) ("Claims of fraudulent joinder must be asserted with particularity and supported by clear and convincing evidence.").  And this burden "'is a heavy one.'"  *Walker*, 443 F. App'x at 953 (quoting *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

Dr. Kakavand argues that there is "no colorable basis for predicting that Plaintiff could recover from KMSF."  [Record No. 5, p. 13]  He contends that KMSF can neither be held directly liable or vicariously liable for his alleged medical negligence.  Under Kentucky law, it is well-settled that the elements of a medical malpractice action are no different than any other negligence action, thus requiring the plaintiff to demonstrate: duty, breach, causation, and injury.  *Grubbs ex rel. Grubbs v. Barbourville Family Health Ctr.*, *P.S.C.*, 120 S.W.3d 682, 687 (Ky. 2003); *see also Harless v. United States*, No. 07-141-GFVT, 2008 U.S. Dist. LEXIS 109112, at *11-13 (E.D. Ky. Nov. 26, 2008).  "Duty, the first element, presents a question of law," *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 89 (Ky. 2003), and if no duty exists, there can be no actionable negligence.  *Jenkins v. Best*, 250 S.W.3d 680, (Ky. App. 2007) (quotation marks and citations omitted).  However, if such a duty does exist, a medical malpractice plaintiff must "prove that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence

-14-

proximately caused [the plaintiff's] injury." *Grubbs*, 120 S.W.3d at 694 (Keller, J., concurring, in part, dissenting, in part) (quotation marks and citations omitted); *see also Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).

The plaintiff's Complaint states that "at all times herein [Dr. Kakavand] was the agent, servant and employee of [KMSF]," and that KMSF "provided medical services to [MJL] through its agents, servants and employees or ostensible agents, servants, and employees, including but not limited to [Dr. Kakavand]." [Record No. 3-1, p. 2 ¶¶ 2-3] Further, the plaintiff alleges that "[KMSF] individually and through its actual or ostensible agents, servants and employees, including but not limited to [Dr. Kakavand] was negligent in the medical care it provided to [MJL] and is vicariously and directly liable for the acts and omissions of those actual or ostensible agents." [*Id.*, pp. 2-3 ¶ 7] The plaintiff alleges that as a result of the defendants' negligence, MJL sustained serious personal injuries. [*Id.* p. 3 ¶ 8]

In assessing claims of fraudulent joinder, the potential for legal liability "must be reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992). And, as noted above, it is proper for courts to pierce the pleadings and consider summary-judgment-type evidence, such as affidavits provided by the parties, in determining the validity of the plaintiff's joinder of a non-diverse defendant. *See Walker*, 443 F. App'x at 953; *see also Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012). Here, Dr. Kakavand provides an affidavit of Darrell A. Griffith, the Executive Director for business operations for KMSF, in support of his

contention that KMSF can neither be found directly nor vicariously liable. Griffith states that KMSF does not employ physicians affiliated with the UK or UK Healthcare, does not pay their salaries, and does not have the authority to direct, supervise, or otherwise exercise control over the actual practice of medicine by physicians affiliated with UK or UK Health Care, including Dr. Kakavand. [Record No. 3-3, pp. 1-2 ¶¶ 3-5, 7] He also indicates that KMSF neither practices medicine nor provides medical services. [*Id.*, ¶ 6] Instead, "KMSF provides billing and other administrative services relating to the services of more than 600 physicians and other health care providers affiliated with the [UK's] health care system." [*Id.*, ¶ 2]

Dr. Kakavand asserts that these averments demonstrate that KMSF cannot be held directly liable because it is not a hospital or medical practice, does not provide medical services through it employees, and has no control over the practice of medicine. [Record No. 5, p. 14] Further, he contends that KMSF cannot be vicariously liable because he was not an employee of KMSF when he treated MJL, and because KMSF did not exercise control over him. Dr. Kakavand also provides a sworn affidavit, stating that when he treated MJL he was "an employee of the University of Kentucky" as well as a photocopied excerpt of his 2012 W-2 tax record which lists the University of Kentucky under the "Employer" section of the form.[7] [*See* Record No. 5-2, p. 1 ¶ 3; *Id.*, p. 3.]

---

7    Dr. Kakavand has also provided the Court with two state court orders, which he contends demonstrate that KMSF cannot be liable either directly or vicariously. [Record No. 5-3, pp. 1-5] The Fayette Circuit Court order in *Brahan v. Rock, et al.*, states that "all claims asserted against KMSF are dismissed with prejudice because the Court finds that there is an insufficient basis to hold KMSF vicariously liable for the alleged negligence of the defendant-physicians. The second Fayette Circuit Court order from *McCann, et al. v.*

The plaintiff contends "Kentucky law is clear that a practice group, hospital, or other entity governing physicians cannot avoid liability just because the entity itself does not practice medicine." [Record No 4-1, p. 7] Additionally, the plaintiff alleges that KMSF is also vicariously liable for the actions of Dr. Kakavand. [Record No. 4-1, p. 8-10 (quoting *King v. Shelby Rural Elec. Co-op. Corp.*, 502 S.W.2d 659, 664 (Ky. 1973) ("The right to control is one of the important tests used to distinguish between the master-servant and the employer-independent contractor relationship."))] In support of her contention that KMSF could be held either directly or vicariously liable for the claims of medical negligence, she cites a number of cases where hospitals and professional medical entities have been held liable for the medical negligence of its staff and physicians under such theories as negligent hiring and retention, negligent supervision, and negligent credentialing. *See, e.g.*, *Williams v. St. Claire Med. Cntr.*, 657 S.W.2d 590 (Ky. App. 1983).

While the authority the plaintiff cites is a correct assessment of Kentucky law, the plaintiff's Complaint is devoid of any comparable or analogous factual allegations concerning KMSF. [*See* Record No. 4-1, pp. 7-8.] Each of the cases relied on by the plaintiff is distinguishable from the underlying facts of this case for the simple reason that the services KMSF provides are in no way implicated by the plaintiff's claim of medical negligence. After Dr. Kakavand put forth evidence demonstrating that KMSF only provides

---

*Bradley, et al.*, indicates that the defendants' motion to dismiss or for summary judgment is granted to a number of the defendants, one of which is KMSF. These orders are neither dispositive nor controlling. The question presented is whether, in this case, the plaintiff has made sufficient factual claims to establish a valid cause of action against KMSF if those facts are subsequently proven.

billing and administrative services – not medical services – and that it was not the employer of Dr. Kakavand, the plaintiff offers no proof to support any of her claims of agency.

Mere allegations are insufficient under these circumstances where the defendant has shown evidence of no employment or agency relationship between the parties, and the plaintiff's failure to provide contravening evidence renders the defendant's evidence uncontested. *See, e.g., Faucett v. Ingersoll-Rand Mining & Mach. Co.*, 960 F.2d 653, 654-55 (7th Cir. 1992) (in a product liability action, finding that fraudulent joinder was properly established when the non-diverse defendant provided an uncontradicted affidavit stating that he nothing do with the machine at issue). Thus, when the defendant comes forth with evidence supporting his claims of fraudulent joinder, the plaintiff must provide the Court with some factual basis, evidence, or scenario that would exhibit a reasonable possibility that the defendant could be held liable of the claims alleged. *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."); *see also Boss v. Nissam N. Am.*, 228 F. App'x 331, 336 (4th Cir. 2007); *Lobato v. Pay Less Drug Stores, Inc.,* 261 F.2d 406, 409 (10th Cir. 1958) (finding that corporate officers were fraudulently joined where uncontradicted affidavits exhibited that they had nothing to do with the assembly and sale of an allegedly defective bicycle); *Culpepper v. Stryker Corp.*, No. 2:12-cv-767-MEF, 2013 U.S. Dist. LEXIS 130380, at *23-24 (M.D. Ala. Sept. 12, 2013).

In short, the plaintiff has failed to provide the Court with *any* evidence that disavows the evidence provided by Dr. Kakavand that KMSF was neither the employer, nor had any type of control over Dr. Kakavand or the practice of medicine at UK or UK Healthcare. The evidence before the Court demonstrates that KMSF only provides billing services and other administrative duties for UK physicians. The plaintiff has offered nothing to refute this evidence. Moreover, the plaintiff's claims are not based on billing or administrative issues; rather, she is pursuing claims of medical negligence concerning an alleged failed medical procedure performed by Dr. Kakavand. As noted above,  to establish a claim of medical negligence under Kentucky law, there must have first existed a relationship between KMSF and M.L.J. that gave rise to a duty being owed to M.L.J. by KMSF. *See Reams v. Stutler*, 642 S.W.2d at 588. However, the uncontested evidence before the Court demonstrates that no such relationship existed, and Dr. Kakavand has demonstrated that KMSF's duties of performing billing services and administrative services is not connected with the alleged negligently performed medical procedure. *See Jenkins*, 250 S.W.3d at 694.

Again, the only evidence before the Court indicates that KMSF has no control over the practice of medicine by physicians at UK or UK Healthcare. It is not a hospital, medical practice, or physician group. And it neither employed nor exercised any control over UK physicians, including Dr. Kakavand. *See Home Ins. Co. v. Cohen*, 357 S.W.2d 674, 676 (Ky. 1962) ("[T]o impose liability upon the master for either a civil or criminal wrong, the proof must show that the act is one that the agent was employed to perform, or that it accrued substantially within the authorized time and space limits of the employment or that the

offender was actuated at least in part by a purpose to serve the master.")  Based on the information presented to the Court, there exists no possibility that Kentucky law would recognize a claim of medical negligence against KMSF.

As the Eleventh Circuit succinctly explained, "[i]n considering possible state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 n. 5 (11th Cir. 2005) (quoting *Braden v. Wyeth*, No. 04-PT-235-E, 2005 U.S. Dist. LEXIS 25243, at *3 (N.D. Ala. June 30, 2005)).  Faced with the unopposed facts provided by Dr. Kakavand, compared to the unsupported allegations of the plaintiff, the Court cannot conclude that there is any reasonable possibility that the plaintiff could establish a colorable medical negligence claim against KMSF under Kentucky law.  And because the plaintiff has failed to offer anything to contradict the evidence provided by Dr. Kakavand, there are simply no contested issues of fact or law which the Court must consider.  *See Coyne*, 183 F.3d at 493 (noting that when weighing validity of assertion of joinder, the Court "must resolve all *disputed* questions of fact and ambiguities" in the state law in favor of the non-removing party  (emphasis added)).  Based on the foregoing, Dr. Kakavand has sufficiently demonstrated that KMSF was fraudulently joined in this action.

## IV.

For the reasons discussed above, it is hereby

**ORDERED** that the plaintiffs' motion to remand [Record No. 4] is **DENIED**.

This 27ᵗʰ day of September, 2013.



Signed By:

*__Danny C. Reeves__* DCR

**United States District Judge**