UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| TONYA LINDON, as | ) | |
| Guardian of M.J.L., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 13-026-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BAHRAM KAKAVAND, M.D., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On April 29, 2014, United States Magistrate Judge Robert E. Wier denied the plaintiff's motion to compel[1] a report generated by Dr. David J. Bradley (the "Bradley Report") from Non-Party University of Kentucky Medical Center ("UKMC").[2] [Record No. 40] Dr. Bradley is an outside consultant from the University of Michigan whom UKMC hired to investigate the alleged negligently performed procedure by Defendant Dr. Bahram Kakavand. In relevant part,

---

[1] The plaintiff's non-dispositive motion was referred to a United States Magistrate Judge for resolution under 28 U.S.C. § 636 (b)(1)(B).

[2] This is a medical malpractice action arising from Defendant Dr. Bahram Kakavand's alleged negligent performance of a electrophysiology study and ablation procedure. Kakavand was employed by UKMC at the time of this procedure. While not a party to this action, UKMC is statutorily responsible for investigating, defending, and resolving medical malpractice claims brought against its health care providers. *See* KRS § 164.941(7).

Although the plaintiff seeks to compel UKMC to produce any documents related to Dr. Bradley's review of MJL's procedure as well as all other patients of Dr. Kakavand, UKMC states that Dr. Bradley's report is the only document that is responsive to the plaintiff's request. The Magistrate Judge construed this representation to indicate that Dr. Bradley assessed only MJL's case. UKMC was directed to promptly correct this conclusion if erroneous. [Record No. 40, p. 2] UKMC stands by its initial representation and the plaintiff has not contested this finding. Thus, the Court only reviews the plaintiff's motion to compel relative to Dr. Bradley's Report.

-1-

the Magistrate Judge determined that Dr. Bradley's report was protected from discovery because it is work product under Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure, as well as the work of a non-testifying expert under Rule 26(b)(4)(D). [*Id.*] The plaintiff disagrees and timely filed objections. [Record No. 41] For the reasons explained below, the plaintiff's objections will be overruled.

## I.

Under Rule 72(a), the Court "must consider timely objections and modify or set aside any part of the [Magistrate Judge's non-dispositive] order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001) ("A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive' preliminary measures of § 636(b)(1)(A).") (quoting *United States v. Raddatz*, 447 U.S. 667, 673 (1980)). This standard of review is a limited one. *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993). Indeed, courts have explained that

> [a] judicial finding is deemed to be clearly erroneous when it leaves the reviewing court with a definite and firm conviction that a mistake has been committed. Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or the only conclusion that can be drawn from the evidence. Further, this standard does not permit the reviewing court to substitute its own conclusion for that of the magistrate judge. Rather, the clearly erroneous standard only requires the reviewing court to determine if there is any evidence to support the magistrate judge's finding and that the finding was reasonable.

*Brownlow v. GMC*, No. 3:05CV-414-R, 2007 U.S. Dist. LEXIS 67973, at *8 (W.D. Ky. Sept. 13, 2007) (quotation marks and citations omitted).

**II.**

The plaintiff argues that: (i) the Bradley Report is discoverable because peer review documents are not privileged under Kentucky law; (ii) the Bradley Report is not work product; (iii) the Bradley Report is not an attorney-client communication; and (iv) UKMC failed to meet its burden of proving privilege and waived privilege by providing a deficient privilege log. Thus, she contends that the Magistrate Judge's order should be set aside and UKMC should be directed to produce a copy of the Bradley Report. [Record No. 41] Conversely, Non-Party UKMC argues that the Magistrate Judge's order should not be set aside or modified. [Record No. 45-2]

### A. Attorney-Client Communication

UKMC has not argued that the Bradley Report constituted an attorney-client communication. Likewise, the Magistrate Judge did not rely on an alleged attorney-client privilege as a basis for concluding that the report is not discoverable. Thus, the Court need not address the plaintiff's third objection. [*See* Record No. 41, pp. 16-18.]

### B. Protected Work Product

The plaintiff's first and second objections are repetitious of prior arguments considered and ultimately rejected by the Magistrate Judge. [Record No. 40] In fact, the entirety of these objections is simply copied-and-pasted from her initial motion and reply brief. [*Compare* Record No. 24-1, pp. 5-10, 4-5, 10-14, *with* Record No. 41, pp. 2-7, 7, 8-11; *compare also* Record No. 31, pp. 4-7, 2, *with* Record No. 41, pp. 12-16, 18-19.] The plaintiff provides no new evidence, makes no attempt to distinguish her position, and fails to demonstrate how the Magistrate Judge's conclusions are "clearly erroneous or contrary to law." *Curtis*, 237 F.3d at

603. Her claims were thoroughly addressed and found to be without merit. The plaintiff's attempt to raise these arguments a second time fairs no better.

The main thrust of the plaintiff's argument is that UKMC's investigation into the circumstances of MJL's procedure were not "in anticipation of litigation," but rather a business requirement of UKMC. [Record No. 41, pp.2-16; *see also* Record No. 24.] The plaintiff points to a number of Kentucky hospital licensure rules, administrative regulations, and Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") standards. She contends these rules, regulations and standards require UKMC to undertake an investigation and causal analysis much like the review conducted by Dr. Bradley.

However, the plaintiff's reliance on the cited Kentucky Administrative Regulations is overstated. She again fails to identify any regulation that either: (i) sets forth criteria for the preparation of an incident investigation report and not in the form as the Bradley report and attendant investigation; or (ii) affirmatively *requires* UKMC to prepare such incident reports for cases like MJL's. [*See* 902 KAR 20:016 § 3(3)(a) (stating that administrative reports shall be made and maintained "*as necessary*"); *see also* Record No. 40, pp. 7-8.] Thus, the plaintiff's argument that UKMC was required by state law to record the incident and to report the events is not supported by § 3(3)(a). Likewise, the regulations relied upon by the plaintiff do not patently require a specific report in this context and she does not produce any evidence that the Bradley Report was elicited as a quality assurance activity or that it is tantamount to a committee report required to be kept in the ordinary course of business. *See* 902 KAR 20:016 §§ 3(1)(a), 3(8)(a), 3(8)(b).

Finally, the JCAHO accreditation standards provide hospitals with discretion to define what constitutes a "sentinel event" and only certain sentinel events are subject to review by the Joint Commission. Further, even if a specific sentinel event is deemed reviewable, it does not *per se* result in the hospital submitting its root cause analysis and action plan to the Joint Commission. [*See* Record No. 41-4 (copy of JCAHO Sentinel Event Policy).]

Under the facts presented, the Magistrate Judge correctly concluded that the Bradley Report is protected work product under Rules 26(b)(3)(A) and (4)(D). [Record No. 40] The Magistrate Judge found that the October 26, 2011 letter submitted by UKMC (and the circumstances surrounding it), provided strong evidence that the University retained Dr. Bradley and sought his review and report because of a subjective anticipation of litigation. Through that letter, Ruth E. Booher, then Senior Associate General Counsel of the University of Kentucky ("UK" or "the University") and member of the UK HealthCare Risk Management Committee, communicated to other hospital and University officials[3] that, based on the circumstances surrounding MJL's procedure and the nature of his complications, the University considered litigation a distinct possibility. [Record No. 28] The letter further stated that the investigation into the procedure was undertaken in anticipation of litigation. [*Id.*]

Additionally, affidavits provided by Pisacano and Dr. Nelson generally explained the Risk Management Department's role in investigating, defending, and resolving medical malpractice claims, and that the department often works in collaboration with UK's Office of

---

[3] Booher's letter was addressed to: (i) Margaret Pisacano, Director of Risk Management for UK HealthCare and Associate General Counsel for UK; (ii) Dr. Kevin Nelson, Director of Medical Affairs in the Chief Medical Office and Medical Director oft he Risk Management Department; and (iii) Dr. Louis Bezold, Chief of Pediatric Cardiology. [Record No. 26]

Legal Counsel when reviewing matters involving potential liability to UK. [Record Nos. 36-1, 39-1] They also explained the specifics of MJL's case and the departments' roles in the investigation and eventual hiring of Dr. Bradley and procurement of his outside consultative report. [Record Nos. 36-1, 39-1] UKMC stated that, following MJL's procedure, the Clinical Risk Manager in the Risk Management Department discussed the matter with Booher, Dr. Bezold, and Dr. Nelson and that Booher's letter was sent as a result. UKMC also indicated that the utilization of external reviews to evaluate anticipated legal claims is not uncommon. Pisacano further explained that she thought such an external review was "particularly warranted" in MJL's case provided the complexity of the area of medicine involved. [Record No. 36-1 ¶ 11] As a result, the Risk Management Department, along with Dr. Bezold and Dr. Nelson, and at the direction of Booher and UK's Office of Legal Counsel, collaborated and chose Dr. Bradley as an outside consultant to review MJL's case. Moreover, Dr. Bradley's report has been used by the Risk Management Department and UKMC's counsel to evaluate the plaintiff's claims. [Record Nos. 36-1, 39-1, 26]

Contrary to the plaintiff's assertions, UKMC also expressly denies through sworn declarations that it did not: (i) undertake any type of peer review regarding Dr. Kakavand; (ii) perform any of the quality assurance steps under JCAHO as alleged by the plaintiff; or (iii) treat MJL's case as a sentinel event. Again, the plaintiff provides no evidence to refute these points. The "key issue in determining whether a document should be withheld is the function that document serves." *United States v. Roxworthy*, 457 F.3d 590, 595 (6th Cir. 2006). This requires the Court to review not only the document itself, but the circumstances surrounding the creation of the document.. Further, the Court must assess the "driving force" behind its creation to

determine whether the document would exist in essentially the same form, even without the prospect of litigation. *Id.* In light of the evidence presented, the Magistrate Judge properly concluded that UKMC employed Dr. Bailey's services due to a subjective anticipation of litigation which was objectively reasonable. [Record No. 40, p. 3-6; *see Roxworthy*, 457 F.3d at 593-95 (noting that the Sixth Circuit has adopted the "because of" test, which is a two-prong inquiry, to determine whether a document was created "in anticipation of litigation" for purposes of the federal work product doctrine and consists of: "(1) whether a document was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable").] UKMC has sufficiently demonstrated that it would not have solicited Dr. Bradley's report in substantially the same form if the prospect of litigation was not a real possibility.[4]

## C. Privilege Log

The plaintiff also challenges the privilege log supplied by UKMC regarding the Bradley Report. She contends that: (i) UKMC waived entitlement to protection of the Bradley Report by initially submitting an insufficient privilege log; and (ii) UKMC waived work product protection by disseminating copies the Bradley Report to three UKMC physicians. [Record No. 41, pp. 18-19] The Court rejects both arguments.

When denying the plaintiff's motion to compel, the Magistrate Judge noted that it appeared that the defendant's initial privilege log related to the Bradley Report was deficient.

---

[4] The plaintiff also re-argues that the involvement of UKMC's counsel in initiating the investigation into MJL's procedure does insulate UKMC from Kentucky's rule that peer review documents are not privileged. In support, she cites a number of state court orders. However, as the Magistrate Judge previously concluded that these orders are inapplicable and unpersuasive. [*See* Record No. 40, p. 11-12.] The plaintiff's argument fails again for the same reasons.

[Record No. 40, p. 12] Specifically, the initial log indicated that Dr. Bezold was the sole recipient of the Bradley Report, but it had become apparent that at least Pisacano and Dr. Nelson also received the report. UKMC was directed to provide a supplemental privilege log demonstrating full report circulation. The plaintiff now contends that UKMC has waived any privilege claim because the initial privilege log did not provide for a comprehensive list of recipients. This is incorrect.

Rule 45(e)(2) of the Federal Rules of Civil Procedure provides for the procedure to be followed by a non-party when withholding subpoenaed documents on the grounds of privilege.[5] Specifically, Rule 45(e)(2)(A) states:

> A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

Fed. R. Civ. P. 45(e)(2)(A). Rule 26(b)(5) provides a substantively similar standard as Rule 45(e)(2) and helps guide the Court's analysis. The Advisory Committee Notes to Rule 26 state that a party seeking to assert a privilege must provide "sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection" and that the rule "does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection." Fed. R. Civ. P. 26 advisory committee's note.

---

[5] The plaintiff incorrectly relies on Rule 26(b)(5) which governs parties claiming privilege. Because UKMC is a non-party responding to a subpoena, Rule 45 governs this issue. Regardless, there is no substantive difference between the standards of either rule.

UKMC contends that it satisfied its burden through its letter of objection to the plaintiff's subpoena[6] and initial privilege log, as well as its response to the plaintiff's motion to compel. It contends that it provided sufficient information to allow the plaintiff and the Court to assess its claim that the Bradley Report was protected as work product and because it consisted of facts known and opinions held by a non-testifying expert consultant retained in anticipation of litigation. UKMC asserts that it was apparent that copies of the report had been provided to Pisacano and others at UKMC and that it did not need to list every single recipient of the Bradley Report in its initial privilege log. However, as discussed below, it is not necessary for the Court to reach this conclusion because any perceived deficiency has been remedied by UKMC's supplementation of its privilege log.[7]

In support of her claim of waiver, the plaintiff relies on *Mafcote, Inc. v. Federal Insurance Co.*, No. 3:08-CV-11, 2010 U.S. Dist. LEXIS 4671 (W.D. Ky. May 11, 2010). But this reliance is misplaced. In *Mafcote* the court examined the propriety of the plaintiff's privilege log. The court found the privilege log to be deficient on a number of grounds. More

---

[6] UKMC's objection letter state that: "The outside consultant conducted an assessment of the MJL case and provided certain opinions in a report addressed to Dr. Bezold. *The report was provided to Ms. Pisacano and others at UKMC*. The report has been maintained in a confidential manner by UKMC and has not been disclosed to any third parties." [Record No. 45-3, p. 2 (emphasis added)]

[7] The amended privilege log identifies the recipients of the Bradley Report as:

The report was addressed to Louis I. Bezold, M.D. On information and belief, the following UK employees received a copy of the report: Kevin R. Nelson, M.D.; Carmel Wallace Jr., M.D. (Chair, UK Department of Pediatrics); Margaret M. Pisacano; Paula Holbrook (Clinical Risk Manager, UK HealthCare Risk Management); Anna Kamp, M.D. (Assistant Professor of Pediatrics and Director, Pediatric Electrophysiology Lab); and Ruth E. Booher. In addition, Bradley Case and Stephen Matingly (counsel for Dr. Kakavand and UKMC) received a copy of the report.

[Record No. 45-4]

specifically, the logs were untimely (despite the parties having been warned on numerous occasions that their failure to abide by the court's privilege log deadline would constitute waiver of any claimed privilege). *Id.* at *13-15. Additionally, the logs identified only the documents' dates, a brief description "providing no substantive information," and the asserted privilege. *Id.* at 14. Although the court ruled that the plaintiff's privilege logs were insufficient, it explicitly found that "imposing a sanction of waiver" of the claimed privilege was not justified. *Id.* at *15. Instead, the better remedy was to order supplementation of the logs. *Id.* at *16.

Here, although the Magistrate Judge found UKMC's privilege log to be deficient, UKMC was directed to supplement. It timely complied with the Court's order, providing all necessary information. Similar to *Mafcote*, the sanction of waiver is not appropriate, especially since UKMC has complied with the court's supplementation directive. Additionally, notwithstanding UKMC's failure to list each individual recipient of the Bradley Report, both the plaintiff and the Court were able to sufficiently review the propriety of UKMC's claimed privilege through the information provided in its previous filings and any apparent deficiencies were promptly remedied through supplementation. Thus, a finding of waiver is not warranted.

The plaintiff also argues that UKMC waived its claimed protection of the Bradley Report by providing copies of the report to several UKMC physicians "who have no connection to this litigation other than as potential witnesses." [Record No. 41, p. 19] This argument misconstrues the law in this circuit. Moreover, the case she cites in support of her argument undercuts her position. [*Id.* (quoting *In re: Columbia/Hca Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002))] There, the Sixth Circuit declined to recognize selective waiver of the attorney-client privilege. The court also examined the issue of selective waiver of work product

protection and concluded that, "[o]ther than the fact that the initial waiver must be to an *adversary*, there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege." *Id.* at 306. In reaching this result, the court endorsed the rule followed by other circuits that "waiver of the work product protection differs slightly from waiver of attorney-client privilege in that the original disclosure *must be to an adversary* in order to find initial waiver." *Id.* at 306 n. 28. The court reasoned that such a rule is appropriate because the "work product doctrine is distinct from and broader than the attorney-client privilege and extends beyond confidential communications between the attorney and client to any document prepared in anticipation of litigation by or for the attorney." *Id.* at 304.

Here, UKMC did not disseminate the Bradley Report to any adversary or potential adversary. Rather, the report was provided only to UKMC personnel. UKMC's circulation of the Bradley Report did not waive the report's protection as work product or work of a non-testifying expert consultant.

### III.

Based on the foregoing analysis, it is hereby

**ORDERED** that the plaintiff's objections to the Magistrate Judge's denial of her motion to compel [Record No. 41] are **OVERRULED**.

This 15th day of August, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge